**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff,**

v.

**NORTH STAR STEEL COMPANY, INC., Defendant.**

**No. 4:CV–91–1179.**

United States District Court, M.D. Pennsylvania.

Dec. 11, 1992.

---

Mark S. Refowich, Easton, PA, David Goldman, United Steelworkers of America, Pittsburgh, PA, for plaintiff.

Vincent Candiello, Morgan, Lewis & Bockius, William J. Flannery, Morgan, Lewis & Bockius, Harrisburg, PA, for defendant.

### ORDER

MUIR, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On September 9, 1991, the United Steelworkers of America, AFL–CIO–CLC (hereafter "Union") filed this action pursuant to the Worker Adjustment and Retraining No-

tification Act of 1988, 29 U.S.C. § 2101 *et seq.* In its complaint the Union alleged that North Star Steel Company (hereafter "North Star") violated that Act when North Star failed to give the Union or its members at least 60 days advance notice prior to laying off approximately 270 of its employees on February 25, 1991. North Star ceased production on that date.

The Union is the exclusive collective bargaining representative of approximately 250 production and maintenance workers who had been employed at North Star's plant located in Milton, Pennsylvania. North Star produced hot rolled steel bars and other steel products at that facility and employed a total of approximately 310 people.

On February 24, 1992, the Union filed a motion for summary judgment supported by admissions of North Star and by affidavits of Union members who had been employed by North Star. In its response to that motion, North Star conceded that its actions constituted a "technical" violation of § 2102(a) of the Worker Adjustment and Retraining Notification Act. By order dated April 9, 1992, 1992 WL 163608, we granted the Union's motion for summary judgment and instructed the Clerk to enter judgment in favor of the Union on the issue of liability.

Presently before the Court is the Union's motion for summary judgment on damages. That motion, a brief in support, and a so-called "supplemental" affidavit were filed on September 30, 1992. After receiving two extensions of time within which to file its brief in opposition to the Union's motion, North Star timely filed its brief on October 30, 1992. The Union also received two extensions of time to file a reply and one was punctually filed on December 4, 1992. The matter is now ripe for disposition.

The standard for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is well settled. Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to judgment as a matter of law. Fed.

R.Civ.P. 56(c). The United States Supreme Court has stated that in motions for summary judgment a material fact is one which might affect the outcome of the suit under relevant substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party then must make a sufficient showing as to the essential elements of his or her case that a reasonable jury could find in his or her favor. *Id.* at 322–23, 106 S.Ct. at 2552–53. We will apply that standard to the Union's motion for summary judgment on damages.

With respect to damages, the Worker Adjustment and Retraining Notification Act states that an employer who fails to provide written notice 60 days in advance of a plant closing or a mass layoff

shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for

(A) back pay for each day of violation at a rate of compensation not less than the higher of—

(i) the average regular rate received by such employee during the last three years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan had the employment loss not occurred.

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a).

On July 31, 1992, the parties filed a stipulation of facts and of agreements. In that

stipulation the parties classify every North Star employee represented by the Union into one of three groups. The first category, entitled "Group A" by the parties, consists of individuals who were laid off on February 25, 1991. The second category, entitled "Group B" by the parties, is comprised of individuals who were laid off between February 25, 1991, and June 3, 1991. The third category of employees, entitled "Group C" by the parties, is made up of individuals who were not available for work between February 25, 1991, and June 3, 1991. The Union concedes that those in Group C are not entitled to damages in this action.

■ The first issue we must address is whether the number of days to be used in calculating the damages for individuals in Groups A and B is the number of calendar days or the number of working days that North Star failed to provide advance notice of the layoff. The Union asserts that each of its members in those two Groups is entitled to the wage rate to which the parties have stipulated for each employee for 60 eight-hour days because that is the number of days that North Star failed to provide notice. North Star argues that each employee's hourly wage rate should be multiplied by only 44 eight-hour days because that is the number of working days encompassed by the 60–day period of North Star's violation of the Worker Adjustment and Retraining Notification Act.

In our view the statutory language at issue in this case is clear. Section 2104(a)(1) states that the employer's liability shall be, *inter alia,* "back pay for each day of violation" up to a maximum of 60 days. North Star violated the Worker Adjustment and Retraining Notification Act when it failed to provide advance notice of the February 25, 1991, layoff. Each day that North Star failed to notify its employees of that layoff in advance of February 25, 1991, is a "day of violation." Nothing in the statute suggests that the Act is violated only on the weekdays that an employer fails to provide notice.

The only other court that has addressed the issue of which we are aware reached the same conclusion. *Carpenters Dist. Council v. Dillard Dep't Stores,* 778 F.Supp. 297 (E.D.La.1991).

■ The next issue is whether the employees in Group B, who were laid off more than 30 days after February 25, 1991, are entitled to damages in this action. North Star initially argues that we may not resolve this issue on summary judgment because there are material facts in dispute in that each employee's circumstances in Group B are unique. We are of the view that while factual differences may exist among those in Group B, we are still able to dispose of the present motion because none of those differences is material.

North Star argues that no employee laid off more than 30 days after February 25, 1991, is entitled to damages in this action. The Worker Adjustment and Retraining Notification Act provides no basis for that argument.

The statute requires an employer to serve written notice of a mass layoff either to the employees "who may reasonably be expected to experience an employment loss as a consequence of a ... mass layoff by their employer," or to such employees' representative. 29 U.S.C. §§ 2101(a)(5) and 2102(a). It is undeniable that when North Star laid off the overwhelming majority of its employees and ceased all production on February 25, 1991, all of its employees in production-related activities may reasonably have been expected to experience an employment loss.

Furthermore, the statute imposes liability on the employer who fails to provide notice to each

> employee who has worked for the employer during the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title did not receive timely notice either directly or through his or her representative as required by section 2102 of this title.

29 U.S.C. § 2104(a)(7). North Star admits that it never provided any notice.

Those are the only provisions addressing the scope of the employer's liability for

failing to provide notice. Not one of those provisions contains language limiting liability based on the date that an employee was laid off. North Star is liable to all the individuals listed in Groups A and B. Moreover, North Star is liable to those employees for the maximum period in the statute because it never provided advance written notice to any employee or any employee representative.

We next address amounts which North Star argues should be deducted from its liability. The first amount is comprised of the wages earned by seven employees who were recalled to work between February 25, 1991, and April 25, 1991. The names of those employees are listed in the affidavit of Harold Olden. The statute provides for the offset of such amounts and the Union concedes that the wages earned by those seven employees should be deducted.

North Star next argues that it is not liable to the employees named in Group C because they were not available for work during the period of violation. The Union agrees.

■ The final offsets sought by North Star concern workmen's compensation payments, wages paid for work performed on the morning of February 25, 1991, to all employees laid off, and wages paid after February 25, 1991, to all the employees named in Group B. With respect to workmen's compensation, North Star is not entitled to offset those payments because they are not listed in the statute's apparently exhaustive list of excludable amounts. *See* 29 U.S.C. § 2104(a)(2).

With respect to wages paid on the morning of February 25, 1991, those amounts are not deductible because they were not paid during the period of North Star's violation of the Act. An employer may only deduct from its liability amounts paid during the period of its violation. 29 U.S.C. § 2104(a)(2)(A).

■ North Star's last theory is that it should be allowed to offset its liability based on wages paid to those named in Group B because they had constructive notice of their impending layoff via the February 25, 1991, layoff. In that argument North Star appears to equate constructive notice with the advanced *written* notice required in the statute. We are of the view that only written notice satisfies the statute.

The Union is entitled to summary judgment because it has shown an absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. North Star has failed to support the essential elements of its case on damages. We next address the Union's claims for prejudgment interest and reasonable attorneys' fees.

■ In its brief in support of its motion for summary judgment on damages, the Union presented authority for the proposition that prejudgment interest may be awarded in a federal labor law case when "the damages from breach of contract are ascertainable with mathematical precision." *Glass, Molders Int'l Union v. Owens–Illinois,* 758 F.Supp. 962, 975 (D.N.J.1991) (Gerry, C.J.), *aff'd without opinion,* 941 F.2d 1201 (3d Cir.1991). The Union attached to that brief a schedule of interest rates used by the National Labor Relations Board in fixing interest payments for monetary awards granted under the National Labor Relations Act.

North Star has failed to respond to the Union's request for prejudgment interest. In addition to being unopposed, the Union's request for prejudgment interest has merit.

This action was brought pursuant to a federal labor law and the damages are ascertainable with precision. Consequently, we are of the view that the Union is entitled to prejudgment interest based on the rate used on backpay awards in actions brought pursuant to the National Labor Relations Act. The period of the Union's award of prejudgment interest shall run from the date each employee's damages accrued to the date of this order.

The final issue raised in the Union's motion is its request for reasonable attorneys' fees. The Union states that because this case is analogous to a Title VII action our discretion in awarding fees should be guid-

ed by Title VII case law. The Union's request for fees is unopposed in that North Star has also failed to respond to it.

■ However, this case is distinguishable from a Title VII action and in our view the boundaries of our discretion in awarding attorneys' fees are delineated by federal labor law. In such cases the Court of Appeals for the Third Circuit has stated that each party must bear its own expenses unless the party against whom fees are sought has litigated in bad faith, vexatiously, or for oppressive reasons. *Glass Molders Int'l, infra.* (citing *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 305 (3d Cir.1982)).

The Union is not entitled to attorneys' fees because North Star has not litigated in bad faith, vexatiously, or for oppressive reasons.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The Union's motion for summary judgment on damages is granted.

2. The Union's request for prejudgment interest is granted.

3. The Union's request for attorneys' fees is denied.

4. Counsel shall within 20 days attempt in good faith to agree upon a form of proposed order which is consistent with the stipulation of facts and agreements entered into by the parties and consistent with the background of this order and shall file the same within 30 days of this order.

5. If counsel are unable to agree upon such a form of proposed order, each shall file a form of proposed order within 40 days of this order.

6. Each party may within 50 days from the date of this order file objections to the form of proposed order submitted by opposing counsel. Any such objections shall be limited to the alleged inconsistency with the stipulation of facts and agreements entered by the parties and the background of this order.