5 F.3d 39
 62 USLW 2178, 126 Lab.Cas. P 10,851,
8 Indiv.Empl.Rts.Cas. 1281
 UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC,
v.
NORTH STAR STEEL COMPANY, INC.,
North Star Steel Company, Inc., Appellant in No. 93-7026,
United Steelworkers of America, AFL-CIO-CLC, Appellant in No. 93-7056.
 Nos. 93-7026, 93-7056.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 12, 1993.
Decided Sept. 14, 1993.
 
 David I. Goldman (argued), United Steelworkers of America, Pittsburgh, PA, Bernard Kleiman, Chicago, IL, for United Steelworkers of America, AFL-CIO-CLC.
 Vincent Candiello (argued), Morgan, Lewis & Bockius, Harrisburg, PA, for North Star Steel Co., Inc.
 Before: SCIRICA, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 United Steelworkers of America ("plaintiff") brought this action against North Star Steel Company, Inc. ("defendant") alleging violations of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. Secs. 2101-2109. The district court had jurisdiction under 28 U.S.C. Sec. 1331. See also 29 U.S.C. Sec. 2104(a)(5). We have jurisdiction under 28 U.S.C. Sec. 1291 over this appeal and cross-appeal from a final judgment of the district court.
 
 I. BACKGROUND
 
 2
 Plaintiff is the exclusive bargaining representative for production and maintenance workers at defendant's plant in Milton, Pennsylvania. Plaintiff brought this action alleging that defendant laid off employees at the Milton plant without providing prior notice as required by WARN. See 29 U.S.C. Sec. 2102(a). The district court first granted summary judgment for plaintiff as to defendant's liability after concluding that the layoff was in violation of WARN's requirements. Defendant does not contest its liability on appeal.[1]
 
 
 3
 Subsequently, the district court also granted summary judgment for plaintiff as to the number of days for which defendant is required to pay damages. 809 F.Supp. 5.[2] On this appeal, defendant argues that the district court erred in interpreting Section 2104(a)(1)(A) of WARN to require that defendant pay damages to each aggrieved employee for each day of the violation period--whether or not that day would have been a regular workday for that employee. Plaintiff understandably contends that the district court properly interpreted Section 2104(a)(1)(A). We turn to a review of this argument. Our review is plenary. See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 II. DISCUSSION
 A. Interpretation of Section 2104(a)(1)(A)
 
 4
 The sole issue appealed by defendant is the number of days for which it must pay damages to its aggrieved employees under Section 2104(a)(1)(A) of WARN. The district court interpreted that section to require that defendant pay damages for each calendar day within the violation period.[3] Defendant argues that Section 2104(a)(1)(A) does not require it to pay damages to an aggrieved employee for any day within the violation period that would not have been a regular workday for that employee. To our knowledge, this interpretive issue has not yet been decided by any federal court of appeals.[4]
 
 
 5
 The Supreme Court has stated that "[t]he task of resolving the dispute over the meaning of [a statute] ... must begin with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Section 2104(a)(1) states, in pertinent part:
 
 
 6
 (1) Any employer who orders a plant closing or mass layoff in violation of [WARN] shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for--
 
 
 7
 (A) back pay for each day of the violation at a rate of compensation not less than the higher of--
 
 
 8
 (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
 
 
 9
 (ii) the final regular rate received by such employee ...
 
 
 10
 Such liability shall be calculated for the period of the violation, up to a maximum of 60 days....
 
 
 11
 The district court concluded that this language was unambiguous and that it required a violating employer to pay damages to each aggrieved employee for each calendar day within the violation period--regardless of whether that day would have been a regular workday for the employee (e.g., Saturdays, Sundays and holidays). Defendant counters that this language is ambiguous and that, in light of legislative history, it should be interpreted to require only that damages be paid for each regular workday within the violation period. Defendant further argues that the interpretation of the statute adopted by the district court may produce anomalous results in other cases not presently before us.
 
 
 12
 We must first determine if the statutory language is clear on its face insofar as our issue is concerned. If so, our inquiry is generally complete and the plain language controls. See Ron Pair, 489 U.S. at 241, 109 S.Ct. at 1030. We turn to that determination.
 
 
 13
 The statute states that a violating employer is liable to each aggrieved employee for "back pay for each day of the violation." 29 U.S.C. Sec. 2104(a)(1)(A). Both parties focus on a selected portion of this quoted language to support their respective positions. Plaintiff focuses on the phrase "for each day of the violation" in arguing that the statutory language is unambiguous and that defendant must pay damages for each calendar day within the violation period--regardless of whether or not that day would have been a regular workday for the employee. Defendant focuses on the term "back pay" in arguing that the statutory language is ambiguous. We must examine the parties' interpretive arguments.
 
 
 14
 Plaintiff argues that a common sense reading of the plain language of Section 2104(a)(1)(A) supports its interpretation that defendant is liable for damages for each calendar day of the violation. As a necessary corollary to its argument, plaintiff takes the position that the term "back pay" is simply a label used to describe the amount of damages for which an employer is liable for each day of the violation.[5]
 
 
 15
 It is undisputed that the days of the violation period are "calendar days" rather than workdays. See 20 C.F.R. Sec. 639.1(a) (1992) ("[WARN] ... requir[es] employers to provide notification 60 calendar days in advance of plant closings or mass layoffs."); id. Sec. 639.5(a) ("[N]otice must be given at least 60 calendar days prior to any planned plant closing or mass layoff...."). In fact, no section of WARN expressly refers to "workdays" (as opposed to calendar days). Thus, under the plain language of the statute, a violating employer is liable for "back pay" for each of the calendar days of the violation.
 
 
 16
 Defendant argues that the term "back pay," which immediately precedes the phrase "for each day of the violation," renders Section 2104(a)(1)(A) ambiguous. Defendant points out that the use of the term "back pay" in a traditional labor relations context generally connotes a lost earnings concept. Under a lost earnings concept, damages would not be payable for days that would not have been regular workdays for the employee. Thus, defendant asks us to interpret the statute's reference to "back pay for each day of the violation" to mean lost earnings during the period of the violation.
 
 
 17
 Commonly accepted rules of statutory construction compel us to conclude that the meaning of the term "back pay" in WARN cannot be the lost earnings concept that defendant urges us to embrace. First, we have consistently held that "[c]ourts should avoid a construction of a statute that renders any provision superfluous." Pennsylvania v. United States Dept. of Health and Human Servs., 928 F.2d 1378, 1385 (3d Cir.1991); see United States v. Nordic Village, Inc., --- U.S. ----, ----, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("[A] statute must, if possible, be construed in such fashion that every word has some operative effect."). Second, "a court should avoid an interpretation of a statute that would lead to absurd or unreasonable results." Robert T. Winzinger, Inc. v. Management Recruiters, Inc., 841 F.2d 497, 500 (3d Cir.1988).
 
 
 18
 If "back pay" meant lost earnings, one of the aforementioned rules of statutory construction would necessarily be violated. That is, a section of WARN would be rendered superfluous or application of that section would produce unreasonable results. That section states:
 
 
 19
 (2) The amount for which an employer is liable under [Section 2104(a)(1) ] shall be reduced by--
 
 
 20
 (A) any wages paid by the employer to the employee for the period of the violation;
 
 
 21
 (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation; and
 
 
 22
 (C) any payment by the employer to a third party or trustee ... on behalf of and attributable to the employee for the period of the violation.
 
 
 23
 29 U.S.C. Sec. 2104(a)(2).
 
 
 24
 If "back pay" meant lost earnings, Section 2104(a)(2) would be superfluous because a lost earnings calculation would automatically exclude the reductions it sets forth. Thus, there would appear to be no need for the above-quoted language and the rule of statutory construction that requires us to avoid constructions that render statutory provisions superfluous would be violated.
 
 
 25
 Alternatively, assuming again that "back pay" meant lost earnings, if Section 2104(a)(2) were not superfluous an employer would receive double credit for any of the payments set forth in that section. This double credit would occur because the payments set forth in Section 2104(a)(2) would be subtracted once to compute the "back pay" for which the employer is liable under Section 2104(a)(1) and then would be subtracted a second time because Section 2104(a)(2) mandates that the employer's liability under Section 2104(a)(1) "shall be reduced by" any of the specified payments. If we interpreted this section to permit employers to obtain such a double credit, the rule of statutory construction that requires us to avoid constructions that produce unreasonable results would be violated.
 
 
 26
 A third commonly accepted rule of statutory construction also supports our conclusion that "back pay" does not mean lost earnings. Namely, a statute's provisions should be read to be consistent with one another, rather than the contrary. See Coar v. Kazimir, 990 F.2d 1413, 1419-20 (3d Cir.1993), petition for cert. filed, 62 U.S.L.W. 3060 (U.S. Jul. 9, 1993) (No. 93-62); accord United States v. Tighe, 551 F.2d 18, 20 (3d Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). An employer who violates WARN is entitled to reduce its liability to its aggrieved employees only by payments within the categories set forth in Section 2104(a)(2) that it paid to the aggrieved employees. See 29 U.S.C. Sec. 2104(a)(2). If we were to interpret "back pay" to mean lost earnings, the employer would be entitled to reduce its liability by any earnings that the employees received during the period of the violation, even if those earnings were received from a different employer. Thus, there would be a conflict between Subsections 2104(a)(1) and 2104(a)(2)(A).
 
 
 27
 Defendant's proffered interpretation of the term "back pay" would violate accepted rules of statutory construction. Accordingly, we reject defendant's argument that use of the phrase "back pay" implies a lost earnings concept and, by so doing, renders the statutory language unclear. We conclude instead, as the district court implicitly concluded, that WARN uses the term "back pay" simply as a label to describe the daily rate of damages payable. See supra note 5. Because the statutory language is clear, our inquiry is at an end. See Ron Pair, 489 U.S. at 241, 109 S.Ct. at 1030. Our "sole function ... is to enforce it according to its terms." Id. (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).
 
 
 28
 We are unpersuaded by defendant's argument that the interpretation we adopt might produce anomalous results in another case not presently before this court.[6] Defendant's argument on this point necessarily assumes that this court would adopt defendant's interpretation of the two statutory provisions that establish the amount of damages that are to be paid to an aggrieved employee for each day of the violation. See 29 U.S.C. Secs. 2104(a)(1)(A)(i), (ii). The interpretation of those provisions is not an issue before us on this appeal.[7] Therefore, we express no opinion as to the proper interpretation of Section 2104(a)(1)(A)(i) or Section 2104(a)(1)(A)(ii).
 
 
 29
 In sum, we conclude that the district court correctly granted summary judgment for plaintiff as to the number of days for which damages are payable.
 
 B. Attorney's Fees
 
 30
 Section 2104(a)(6) of WARN states that, in any action under the statute, "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee...." Plaintiff was the prevailing party in the district court and it filed an unopposed request for attorney's fees. Nevertheless, the district court denied plaintiff's fee request after concluding that defendant had not "litigated in bad faith, vexatiously, or for oppressive reasons." United Steelworkers of America, AFL-CIO-CLC v. North Star Steel Co., 809 F.Supp. 5, 10 (M.D.Pa.1992).
 
 
 31
 The bad faith/vexatious standard applied by the district court is the standard that is generally applied when there is not a statutory provision that authorizes the award of attorney's fees. See, e.g., Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 305 (3d Cir.1982) (considering a request for attorney's fees in an action under Section 301 of the Labor Management Relations Act). In its cross-appeal, plaintiff contends that the district court should have applied the standard that is generally applied where, as here, there is a statutory provision that authorizes the award of attorney's fees.
 
 
 32
 We note that the language of WARN's attorney's fee provision is virtually identical to the fee-shifting language in many civil rights statutes. Compare 29 U.S.C. Sec. 2104(a)(6) ("[T]he court, in its discretion, may allow the prevailing party a reasonable attorney's fee....") with 42 U.S.C. Sec. 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...."). The Supreme Court instructs us that "similar language [in fee-shifting statutes] is 'a strong indication' that they are to be interpreted alike." Independent Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989) (quoting Northcross v. Memphis Bd. of Educ., 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973)). The Supreme Court also instructs that, where, as here, the fee-shifting statute authorizes an award of attorney's fees to a "prevailing plaintiff," that party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).
 
 
 33
 In light of the Supreme Court precedent in this area, we conclude that the district court erred in applying the bad faith/vexatious standard to an action under WARN. Accordingly, we will vacate the district court's order to the extent that it denies plaintiff's request for attorney's fees and we will remand this issue for resolution by the district court based on the standard announced by the Supreme Court.
 
 III. CONCLUSION
 
 34
 The order of the district court will be affirmed to the extent that it requires defendant to pay the agreed amount of damages for each day of the violation. We will vacate the district court's order to the extent that it denies plaintiff's request for attorney's fees and remand that claim for further proceedings consistent with this opinion.
 
 
 
 [1]
 Thus, we need not address Moore v. Warehouse Club, Inc., 992 F.2d 27 (3d Cir.1993)
 
 
 [2]
 After the district court determined the number of days for which defendant was required to pay damages, the parties stipulated to the actual dollar amount of damages for which defendant was liable to each aggrieved employee
 
 
 [3]
 The number of days in the violation period is undisputed
 
 
 [4]
 The United States Court of Appeals for the Fifth Circuit has pending before it a case involving this same issue. See Carpenters Dist. Council v. Dillard Dept. Stores, Inc., Nos. 92-3419 & 92-3613 (argued Aug. 5, 1993)
 
 
 [5]
 WARN states that the amount of damages for which an employer is liable for each day of the violation is the greater of: (1) "the average regular rate received by such employee during the last 3 years of the employee's employment" or (2) "the final regular rate received by such employee." 29 U.S.C. Sec. 2104(a)(1)(A)(i), (ii)
 
 
 [6]
 Defendant bases its anomalous results argument on a hypothetical situation such as the following:
 Assume that an employer violates WARN by laying off employees and that the period of the violation is 60 days. Assume further that aggrieved employee "A" was a full-time employee who worked a regular 8 hour day each weekday (i.e., Monday through Friday). Finally, assume that aggrieved employee "B" was a part-time employee who worked just one 10 hour day each Saturday.
 Based on these assumptions, defendant argues that, under the interpretation of Section 2104(a)(1)(A) that we adopt, full-time employee "A" would receive 480 hours' pay (8 hours/day * 60 days) whereas part-time employee "B" would receive 600 hours' pay (10 hours/day * 60 days). Defendant notes that it would be anomalous for a part-time employee to receive 120 hours' pay in excess of that received by a full-time employee. As explained in the text accompanying this footnote, the soundness of defendant's analysis is a matter for another day.
 
 
 [7]
 The briefs in the district court and on appeal indicate that the parties were in apparent agreement as to how these two sections should be interpreted. In any event, the interpretation of these sections was not an issue that was argued in the briefs or at oral argument. In addition, at oral argument, counsel for defendant conceded that we could resolve this case for either party without reaching this anomalous results issue