**LOCAL 1239, INTERNATIONAL BROTH-ERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS, Plaintiff,**

v.

**ALLSTEEL, INC., Defendant.**

No. 94 C 3552.

United States District Court,
N.D. Illinois,
Eastern Division.

June 1, 1998.

Leon M. Despres, Thomas Howard Geoghegan, Sarah Vanderwicken, Jeffrey Charles Boulden, Despres Schwartz & Geoghegan, Chicago, IL, for Intern. Brth. of Boilermakers–Iron Ship Builders–Blacksmiths Forgers & Helpers.

Paul Thaddeus Fox, Robert Kaiser Neiman, Stephen J. Lqandes, Julie Lynn Schulz, Holleb & Coff, Chicago, IL, for Allsteel, Inc.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court are the parties' cross-motions for partial summary judgment on the issue of how to calculate damages under § 2104(1)(a) of the Worker Adjustment and Retraining Notification Act (the "WARN Act"). *See* 29 U.S.C. § 2104(1)(a) (West Supp.1998). Also before the court is defendant's subsequent motion for partial summary judgment on whether it should be held liable for any damages. On the cross-motions for summary judgment, we grant defendant's motion and deny plaintiff's. We also deny defendant's second motion for partial summary judgment.

## BACKGROUND

Plaintiff, Local 1239, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers ("Local 1239"), sued defendant Allsteel, Inc. ("Allsteel") under the WARN Act, 29 U.S.C. §§ 2101–2109, alleging that defendant failed to comply with the notification provisions of the Act when it closed a manufacturing facility. On June 7, 1995, we denied defendant's motion for summary judgment, holding that defendant did not give sufficient notice of the plant closing to comply with the WARN Act. *Local 1239 v. Allsteel, Inc.,* 1995 WL 348028, at *1–2 (N.D.Ill. June 7, 1995) (setting forth all of the undisputed facts of this case). On April 15, 1996, we denied defendant's subsequent motion for summary judgment which argued that Allsteel was entitled to the WARN Act's "good faith" defense under § 2104(a)(4). *Local 1239 v.. Allsteel, Inc.,* 1996 WL 182567 (N.D.Ill. April 15, 1996). Finally, on December 18, 1996, we held that defendant is liable under the WARN Act and granted plaintiff's motion for summary judgment. *Local 1239 v. Allsteel, Inc.,* 955 F.Supp. 78 (N.D.Ill.1996). The remaining issues relate to damages.

## DISCUSSION

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The only issue before the court is the meaning of a statutory phrase, a purely legal question properly resolved on a motion for summary judgment. *See Cooper v. Wal–Mart Stores, Inc.,* 106 F.3d 1338, 1340 (7th Cir.1997) (stating that a question of statutory construction is a question of law).

## I. Cross–Motions for Summary Judgment

The purpose of the WARN Act is to ensure that workers and their communities receive advance notice of the loss of employment so that the workers may begin the search for other employment or, if necessary, obtain training for another occupation. 20 C.F.R. § 639.1(a) (1997); *Alarcon v. Keller Indus., Inc.,* 27 F.3d 386, 388–89 (9th Cir. 1994). To achieve this purpose, the WARN Act requires employers to give written notice of an impending plant closing or mass layoff no less than 60 days before the action is taken. 29 U.S.C. § 2102(a) (West Supp. 1998). A regulation specifies the information employers must include in the notices. 20 C.F.R. § 639.7 (1997). If an employer violates the WARN Act, it must pay a civil penalty to local governmental bodies, 29 U.S.C. § 2104(a)(3), and damages to aggrieved employees. 29 U.S.C. § 2104(a)(1). The parties dispute the meaning of the following provision, which specifies the damages payable to aggrieved employees:

(1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff—

(A) back pay for each day of the violation at a rate of compensation not less than the higher of—

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee . . .

Such liability shall be calculated for the period of the violation, up to a maximum of · 60 days....

29 U.S.C. § 2104(1)(a).

The dispute between the parties centers on the phrase "back pay for each day of the violation." Plaintiff argues that this means the employer is liable for damages for each calendar day within the violation period. For example, if the period of the violation is 60 days, the employer must pay each employee 60 days of wages regardless of whether the employee would have worked each of those 60 days. Defendant argues that the statute only requires the employer to pay the employee for every work day in the period of the violation. This would exclude from the 60 day period weekends, unpaid days off and holidays.

Whether an employer is liable for calendar days versus work days is a question of first impression in this circuit. Outside the Seventh Circuit there is no consensus on this issue; however, the majority rule is that the employer is liable only for work days within the period of the violation. *Breedlove v. Earthgrains Baking Co., Inc.*, 140 F.3d 797, 801 (8th Cir. 1998); *Saxion v. Titan–C–Mfg., Inc.*, 86 F.3d 553, 561 (6th Cir.1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 772 (10th Cir.1995); *Carpenters Dist. Council of New Orleans and Vicinity v. Dillard Dept. Stores*, 15 F.3d 1275, 1286 (5th Cir.1994); *see also Washington v. Aircap Indus., Inc.*, 860 F.Supp. 307, 312–13 (D.S.C.1994). The minority view, espousing the calendar days approach, was articulated by the Third Circuit, the first circuit court to consider this issue. *United Steelworkers of Am., AFL–CIO–CLC v. North Star Steel Co., Inc.*, 5 F.3d 39, 43–44 (3d Cir.1993); *see also Siniscalchi v. Shop–Rite Supermarkets, Inc.*, 903 F.Supp. 182, 192 (D.Ma.1995).

■ In determining which course we will follow, our inquiry begins with the language of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (stating that "the starting point for interpreting a statute is the language of the statute itself"). Conventional tools of statutory interpretation, such as according words

their ordinary and natural meaning (absent statutory definitions), avoiding rendering words and phrases meaningless or superfluous, and construing the statute in the context of the entire statutory scheme, will guide our inquiry. *Matter of Merchants Grain, Inc. By and Through Mahern*, 93 F.3d 1347, 1353–54 (7th Cir.1996), *cert. denied, Mahern v. Adkins*, —— U.S. ——, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997). We will also favor the more reasonable result. *Id.*

In plaintiff's view, the statute unambiguously means calendar days because it specifies that back pay is due "for each day of the violation." The part of the statute imposing civil penalties to be paid to local government bodies uses the same language: "civil penalty of not more than $500 for each day of such violation." 29 U.S.C. § 2104(a)(3). According to the House Conference Report, this part of the statute is read as imposing penalties for each and every day of the violation— not only the work days. *See* H.R. Conf. Rep. No. 576, 100th Cong.2d Sess. 1053 (stating that the "maximum penalty payable to a local government is $30,000," which is the product of 60 (days) multiplied by $500). It would be incongruous, plaintiff argues, to read the damages provision applying to employees as meaning work days while reading the parallel damages provision as meaning calendar days. Moreover, the work days interpretation is not consistent with the purpose of the statute, which is not to compensate an employee for lost work time, but rather to compensate an employee for "lost opportunity to reorganize his life." *See* Memorandum of Law in Support of Plaintiff's Second Motion for Partial Summary Judgment, at 4. Therefore, an employee should have the benefit of damages for each day of the violation period, not only those days on which he or she would have worked. Finally, if the "work day" scheme is adopted, then noncomplying employers will only have to pay compensatory damages, not penalties. *See id.* (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 31, 115 S.Ct. 1927, 1929, 132 L.Ed.2d 27 (1995) for the proposition that WARN Act damages provide penalties).

Defendant, on the other hand, argues that the statutory language is ambiguous because

the phrase "back pay for each day of the violation" is susceptible of two reasonable interpretations. *See Breedlove,* 140 F.3d 797, 799–800; *Saxion,* 86 F.3d at 560; *Frymire,* 61 F.3d at 771; *Dillard,* 15 F.3d at 1283. It could be a generic reference to a rate of damages (labeled as "back pay") for each calendar day of the violation. On the other hand, the ordinary and natural meaning of the term "back pay" is compensation for earnings that would not have been lost if the violation had not occurred. *See Breedlove,* 140 F.3d 797, 799–800 (citing *Phelps Dodge Corp. v. N.L.R.B.,* 313 U.S. 177, 197, 61 S.Ct. 845, 853–54, 85 L.Ed. 1271 (1941)); *Saxion,* 86 F.3d at 560–61 (same); *Dillard,* 15 F.3d at 1283 (same). Employees could not have earned wages on weekends, days off, and holidays. If the "calendar days" approach were taken, aggrieved employees would be placed in a better position than they would have enjoyed had the violation never occurred. Because of the ambiguity, this court should consider the legislative history of the WARN Act. As the Eighth, Fifth, and Sixth Circuits have noted, the legislative history makes clear that Congress intended to compensate workers only for days they would have worked.

> For violations of the notice provisions, damages are to be measured by the wages … the employee would have received had the plant remained open or the layoff had been deferred until the conclusion of the notice period, less any wages or fringe benefits received from the violating employer during that period. This is in effect a liquidated damages provision[ ], designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings.

*Breedlove,* 140 F.3d 797, 800–01 (quoting S. REP. No. 62, 100th Cong., 1st Sess. 24 (1987)). Finally, adhering to the "calendar days" interpretation could yield unreasonable and absurd results. *Dillard* discussed a hypothetical situation in which the "calendar days" approach would compensate a part-time worker far better than a full time worker.

> [T]he violation period contains sixty days. Employee "A" is a full-time employee who works a regular eight hour shift each weekday. However, employee "B" is a part-time employee who works just one ten-hour shift each Saturday. Under the … calendar-day approach, employee "A" would receive 480 hours pay in lieu of notice (eight hours per day times sixty days), while part-time employee "B" would receive 600 hours pay (ten hours per day times sixty days).

*Dillard,* 15 F.3d at 1285; *see also Breedlove,* 140 F.3d 797, 800–01 (noting that the statute can also be considered ambiguous because the calendar-days interpretation yields unusual and absurd results).

█ We agree with defendant and the circuits holding that the statute imposes damages only for the work days within the violation period. Plaintiff's arguments do not persuade us otherwise.

First, there is no inconsistency in reading § 2104(a)(3) as referring to "calendar days" while reading § 2104(a)(1) as referring to "work days." Unlike § 2104(a)(3), which clearly specifies that an employer may be liable to local governmental bodies for a "civil penalty," nowhere in § 2104(a)(1) does the WARN Act state that the employer must pay "penalties" to its employees. By using "penalty" to describe the former, and "back pay" to qualify the latter, Congress made a distinction between the provisions. The Supreme Court case plaintiff cites, *North Star Steel Co.,* 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27, does not stand for the proposition that under the WARN Act, employers must pay "penalties" to employees. *North Star Steel Co.* only states in dicta that "[a]n employer who violates the notice provisions is liable for penalties by way of a civil action." *Id.* at 31. That statement is perfectly true given the language of § 2104(a)(3) referring to "civil penalties" due to local government bodies, and it does not contradict the proposition that only "back pay" is due to employees. The theory apparently underlying plaintiff's argument is that under the "work days" approach the employer suffers no adverse consequences for failure to comply with the notice provisions because it only has to pay "the same amount to the worker (in the form of lost wages) as [it] would have

even if [it] had given notice." Plaintiff's Motion for Summary Judgment at 4. This suggestion is simply wrong. Employers have an incentive to comply with the WARN Act because they do risk a loss: paying wages to employees but not receiving the benefits of their labor. Moreover, employers risk paying civil penalties to the local government body.

Second, contrary to plaintiff's contention, the "work days" approach does not deprive employees of a full opportunity to readjust and seek re-employment. If employees receive proper notice of a plant closing, they are not entitled to any unearned pay, and have to seek retraining or re-employment on their off-hours. Under the work days approach, the employees are in no way deprived of an opportunity to access training and seek re-employment when proper notice is not given, because they receive compensation for days they would have worked but did not. Indeed, their opportunities are enhanced by having the day-time hours available for job seeking and retraining. On the other hand, being compensated for days they would never have worked to begin with would make them better off than they would have been had defendant complied with the WARN Act provisions.

Finally, plaintiff disputes defendant's argument that the "calendar days" approach yields unreasonable results. *See Dillard,* 15 F.3d at 1285 (discussing the part-time versus full-time worker hypothetical, in which the part-time worker is compensated more than the full-time worker under the "calendar days" approach). Plaintiff notes that the statute requires each employee to receive back pay "at a rate of compensation not less than the higher of—"

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee.

29 U.S.C. § 2102(a)(1)(A)(i) & (ii). Plaintiff focuses on the words "regular rate," a phrase undefined by the WARN Act, and points out

that the Fair Labor Standards Act ("FLSA") also uses that term without defining it. 29 U.S.C. § 207(*o*)(4) (West Supp.1998). However, under the applicable FLSA regulation, the "regular rate" is determined by dividing the "total remuneration for employment" by the number of hours per week that the employee actually worked. *See* 29 C.F.R. § 778.109 (1997). Plaintiff argues that we should construe the WARN Act's "regular rate" in the same way, so that, "a part-time employee's hours may be averaged over a 40-hour, five day week" and therefore, a "part-time employee who worked [a] 20-hour week, receives damages based upon an average of four hours per day, five days per week." Reply Memorandum of Law in Support of Plaintiff's Second Motion for Partial Summary Judgment, at 13. The part-time employee, therefore, would receive no windfall with the calendar days approach because his wages would be calculated on a weekly rate.

Plaintiff's argument is unpersuasive. Neither Congress nor any federal agency have included that definition of "regular rate" in the WARN Act. The Seventh Circuit recently warned that "divining congressional intent from an absence of expression is a quagmire that we must try to avoid." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 343 (7th Cir.1997) (suggesting that Congress' failure to amend the statute at issue in the same way a related statute was amended would indicate two different intentions with regard to the statutes). Indeed, in the absence of a statutory definition, words and phrases are accorded their ordinary and natural meaning. *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1325 (7th Cir. 1997); *Newsom v. Friedman,* 76 F.3d 813, 816–17 (7th Cir.1996). There is no hint in the statute that the rate should be calculated by the week. The only time period mentioned in § 2104(a)(1)(A) is "day." Indeed, the Fifth Circuit has concluded that it is clear the WARN Act provisions "require the calculation of damages based on the *daily amount an employee earns." Dillard,* 15 F.3d at 1285 & n. 15 (emphasis added).[1]

---

**1.** Even if the FLSA regulation did apply, the plaintiff's argument would not withstand scruti-

ny. Plaintiff is incorrect to suggest that the regulations at issue calculate the "regular rate"

We conclude that the § 2104(a)(1)(A) requires employers to compensate aggrieved employees only for work days within the violation period.

## II. *Defendant's Motion for Summary Judgment*

■ In its subsequent motion for partial summary judgment, defendant argues that it should not have to pay any damages for violating the WARN Act, or that its damages should be substantially reduced. Defendant rationalizes its position by fixating on the knowledge of the employees. Relying on *Saxion*, defendant reasons that although the notices Allsteel provided on October 20, 1993 and February 24, 1994 were technically deficient, the employees clearly knew on those dates that the plant would be closing in early April, 1994. *See Saxion*, 86 F.3d at 561 (holding that defendant was not liable for damages for those days within the violation period in which the employees "clearly knew" that the plant would be closing). Defendant argues that the statute does not address the problem of what liability should attach when a defendant provides some notice, though it be deficient, and that this court should "fill in the gap" by adopting *Saxion*'s "clear knowledge" rule. The rule, defendant argues, is supported by legislative history in which Senator Metzenbaum stated that "[w]e are not seeking to place an additional financial burden on the employers of this country. All we seek is notice, not money." 134 Cong. Rec. S8536–01 (1988).

■ We are unpersuaded by defendant's arguments and by the Sixth Circuit's reasoning in *Saxion*. We have already concluded that the notice Allsteel provided to its workers failed to meet the requirements of the WARN Act. *Local 1239 v. Allsteel, Inc.*, 955 F.Supp. 78 (N.D.Ill.1996). "Allsteel does not contest the proposition that notices that do not comply with the requirements of the Act

violate it." Reply of Allsteel, Inc. in Support of its Motion for Partial Summary Judgment, at 5 (emphasis added). The plain language of the statute clearly states that liability attaches to *violations:* "Any employer who orders a plant closing or mass layoff *in violation of section 2102* of this title *shall be liable* . . . for (A) back pay for each day of *violation* . . . ." 29 U.S.C. § 2104(a)(1) (emphasis added). The language of the statute does not focus on the knowledge of the employee; it focuses on whether the defendant violated the statute and how long the violation lasted. Because the language is plain and specific, there is no reason for this court to add another prerequisite for liability. *See Bass*, 111 F.3d at 1326 (stating that "we are prohibited from reading into clear statutory language a restriction that Congress itself did not include"). Moreover, the statutory language being plain, "there is no cause to examine other indicia of legislative intent." *Newsom*, 76 F.3d at 816–17.

■ For good measure, however, we also observe that the statute alleviates its potentially harsh effects by specifically mentioning exceptions. Most notably, § 2104(a)(4) provides that:

> If an employer which was violated this chapter proves to the satisfaction of the court that the *act or omission that violated this chapter was in good faith* and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter *the court may, in its discretion, reduce the amount of the liability* or penalty provided for in this section.

(emphasis added). This subsection clearly contemplates the circumstances at issue here—where notice, though defective because of omissions, is provided to employees—and allows employers to escape or reduce liability[2] if they can show they acted in

---

as a daily average over a five-day week. The regulation, 29 C.F.R. § 778.109, specifically states that "[t]he 'regular rate' under the Act is a rate per hour." *See also* 29 C.F.R. § 778.108. An hourly rate is determined by dividing an employee's weekly, non-overtime remuneration by the number of hours the employee worked in that week. 29 C.F.R. § 778.109. Nothing in this defi-

nition suggests that the number of hours worked per week should be divided by the number of days in the work week to reach a per-day average. Therefore, plaintiff's attempt to render its interpretation of § 2104(a)(1) reasonable by invoking the FLSA regulations is unavailing.

**2.** Defendant argues that the *Saxion* rule applies to a situation not addressed in the statute be-

good faith.[3] There are, therefore, no "gaps" in the statute that this court should "fill in" by reading in another exemption for deficient notice. Indeed, the familiar maxim *expressio unius est exclusio alterius* instructs that the expression of some exceptions to the statute implies the exclusion of other exceptions to the statute. *Hibben v. Nardone*, 137 F.3d 480, 483 n. 6 (7th Cir.1998) (stating that Wisconsin courts recognize this maxim). We decline defendant's invitation to legislate by reading an additional exception into the statute.

■ With regard to the Sixth Circuit's holding to the contrary, we believe the conclusion reached by the Sixth Circuit is not supported by an analysis of the statute itself.[4] *Saxion* simply quotes *Dillard* for the proposition that "neither the Act nor the regulations suggest that defective notice is automatically to be treated as though no notice had been provided at all." *Id.* at 561 (quoting dicta in *Dillard*, 15 F.3d at 1287 n. 19).[5] Defendant attempts to support the Sixth Circuit's holding with snippets of legislative history. However, when the plain language of a statute is clear, as it is in this case, resort to legislative history is unnecessary and inappropriate. *Bass*, 111 F.3d at 1325; *Newsom*, 76 F.3d at 816–17 (citing cases critical of legislative history analysis when statute is unambiguous). Moreover,

the legislative history defendant cites only weakly supports its position. We do not disagree with the proposition that Congress did not pass the WARN Act in order to fleece employers, but that is a far cry from divining an intent to insulate from liability employers who violate the statute but whose employees nonetheless have some information about an impending plant closing.

Finally, we note that the exclusion from liability defendant urges us to adopt could cause future problems in the adjudication of WARN Act liability. The "clear knowledge" standard defendant urges us to adopt would exempt an employer from WARN Act liability when it provides "technically deficient" notice and its employees "clearly know" of the impending plant closing or mass lay-offs. The first issue this raises is what constitutes "clear knowledge." Although this issue presumably would not be a problem in this case—where the employees received individual, though incomplete, notification of the plant closing—it could be a problem in other cases. If an employer, for example, posts its intent to close the plant on a bulletin board (which would not comply with the WARN Act), should every employee in the plant be deemed to know of the plant closing? In the alternative, would it be necessary to hold an evidentiary hearing to determine the subjec-

cause § 2104(a)(4) deals with eliminating liability altogether while the *Saxion* rule deals only with limiting liability. Reply, at 5. This contention is meritless in view of the language of § 2104(a)(4) stating that a court may "reduce" damages. Moreover, it is unclear what defendant hopes to gain from such an argument since it is requesting that all damages be *eliminated* because of the October 20, 1993 notice.

3. In our previous opinions we determined that Allsteel did not act in good faith, and therefore, could not escape or reduce its liability through § 2104(a)(4). *Local 1239 v. Allsteel, Inc.*, 955 F.Supp. at 81; *Local 1239 v. Allsteel, Inc.*, 1996 WL 182567, at \*3.

4. The court's entire discussion of this issue is as follows:

The district court held that because the March 13 notice did not comply with certain technical requirements set forth in 20 C.F.R. § 639.7, there was no shortening of the violation period. But "neither the Act nor the regulations suggest that defective notice is automatically to

be treated as though no notice had been provided at all." *Dillard*, 15 F.3d at 1287 n. 19. We are not persuaded that the technical deficiencies in the March 13 letter required the district court to proceed as if there had been no notice at all.

The March 13 letter indicated that the closing would be permanent and would affect the entire plant. The letter gave the name and telephone number of a company official who could be contacted for questions. That the notice was deficient in other respects does not change the fact that ten days before the plant was closed, the affected employees clearly knew that it was going to be closed. In calculating damages, therefore, the district court should have used a violation period of 50 days, not 60.

*Saxion*, 86 F.3d at 561.

5. The statement in *Dillard* was made in the context of rejecting the plaintiffs' argument that the notices defendant provided were inadequate under the regulations. *Dillard*, 15 F.3d at 1287 n. 19 (determining that the regulations in effect at the time defendant gave the notice, not at the time the lay-offs actually occurred, controlled).

tive knowledge of each employee? We believe this type of inquiry would be wholly inappropriate in light of the statutory language which, as noted above, focuses not on the employees' knowledge but on whether the employer committed a violation.

Defendant's position raises a second problem, as well: allowing employers who violate the WARN Act's notice provisions only "technically" to escape liability would place the courts in the position of having to distinguish between a substantive versus a "technical" violation of the statute. Future defendants would no doubt argue that any notice at all is sufficient to escape liability, even if the notice is tentative, or omits the date of the plant closing, or fails to mention which employees the closing will likely impact. The WARN Act, however, does not distinguish between substantive and so-called "technical" violations. Nor do the statute or regulations rank the list of necessary disclosures in order of importance. Judicially imposed distinctions between substantive and "technical" violations could threaten to reduce or destroy the very protections the WARN Act is intended to provide.

We conclude therefore, that defendant may not escape or reduce its liability because it provided deficient notice of the plant closing on October 20, 1993 or February 24, 1994. We deny defendant's motion for partial summary judgment on this issue. However, because defendant provided adequate notice on April 6, 1994 that the plant would close on April 8, 1994, we hold that the violation period is 58 days long.

### CONCLUSION

On the cross-motions for partial summary judgment regarding the work day versus calendar day approach, defendant's motion is granted and plaintiff's motion is denied. Defendant's motion for partial summary judgment as to the length of the violation period is denied. We hold that defendant is liable for damages for each work day in the 58 day violation period.