

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-21-2005

# UMWA v. Eighty Four Mining

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2130

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"UMWA v. Eighty Four Mining" (2005). *2005 Decisions*. Paper 212.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/212

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-2130

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION;
UNITED MINE WORKERS OF AMERICA,
DISTRICT 2

v.

EIGHTY-FOUR MINING COMPANY,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 99-CV-01721
District Judge: The Honorable William L. Standish

Argued on September 13, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: November 21, 2005)

Judith Rivlin
United Mine Workers of America
8215 Lee Highway
Fairfax, VA 22031

Claudia Davidson [Argued]
Law Offices of Claudia Davidson
429 Fourth Avenue
5th Floor
Pittsburgh, PA 15219
        *Counsel for Appellee*

Michael D. Glass [Argued]
Polito & Smock
444 Liberty Avenue
Suite 400, Four Gateway Center
Pittsburgh, PA 15222
        *Counsel for Appellant*

---

OPINION

---

SMITH, *Circuit Judge*.

Eighty-Four Mining Company ("Eighty-Four") laid off several hundred of its unionized employees in September 1998 without providing the sixty-day advance notice required by the Worker Adjustment and Retraining Notification Act ("WARN Act" or "Act"), 29 U.S.C. § 2102. Although Eighty-Four paid its employees "back pay" as provided by § 2104 of the Act, the International Union of the United Mine Workers of America and its District 2 (collectively referred to as the "UMWA") initiated this WARN action, claiming that the payments were inadequate. The District Court agreed, ultimately entering judgment in favor of the UMWA. For the reasons set forth below, we will affirm in part and reverse in part.[1]

Eighty-Four and the UMWA agreed that the sixty-day advance notice required by § 2102 of the WARN Act was not given and that each of the affected employees was entitled to damages under § 2104 of the WARN Act. The dispute centered on the extent

---

[1]The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have final order jurisdiction under 28 U.S.C. § 1291.

2

of the damages due, including: (1) whether the back pay due and owing under § 2104

was due for the calendar days within the violation period or only the actual work days; (2)

what items of remuneration were encompassed by the term "back pay"; and (3) whether

certain disabled employees were entitled to damages under the WARN Act.

Although this Court concluded in *United Steelworkers of America v. North Star*

*Steel Co.*, 5 F.3d 39, 42 (3d Cir. 1993), that the plain language of § 2104 of the statute

means that "a violating employer is liable for 'back pay' for each of the calendar days of

the violation," Eighty-Four asserted as a Ninth Defense to the UMWA's complaint that it

was only required to pay damages for the work days that fell within the sixty-day WARN

notice period. The UMWA construed this Ninth Defense as a counterclaim and it moved

for dismissal under Rule 12(b)(6). The District Court appropriately relied on our decision

in *North Star*, and granted the motion to dismiss. Eighty-Four challenges that action.[2]

We will affirm the District Court's dismissal of Eighty-Four's Ninth Defense.

Notwithstanding the majority view of our sister courts of appeals that damages under §

2104 of the WARN Act are due only for the actual work days within the sixty day

violation period,[3] we are "bound to adhere to our prior precedents," namely *North Star*.

---

[2] We have plenary review over the grant of a Rule 12(b)(6) dismissal. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

[3] *See Burns v. Stone Forest Indus.*, 147 F.3d 1182, 1183 (9th Cir. 1998) ("construing the statute to mean work days"); *Breedlove v. Earthgrains Baking Co.*, 140 F.3d 797, 801 (8th Cir. 1998) (holding that work days approach should be applied); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 561 (6th Cir. 1996) (adopting *Dillard*'s holding that damages under the WARN Act are to be calculated on the number of work days in the violation

*See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 n.11 (3d Cir. 1998) (citing I.O.P. 9.1 and adhering to *North Star*'s calendar day approach for computing WARN Act damages).

After discovery closed, cross-motions for summary judgment were filed. The UMWA sought to include in the "back pay" calculation payment for overtime, holiday time (*i.e.*, Veteran's Day), birthday pay, and vacation pay. The District Court, adopting a report and recommendation by a Magistrate Judge, concluded that these items should be included in the damages computation and granted summary judgment for the UMWA. Eighty-Four appeals, arguing that the recovery of these items of remuneration is not consistent with the text of § 2104 of the WARN Act.[4] The UMWA asserts that "back pay" includes all of the wages and benefits the employees would have earned during the period of violation, and therefore payment for overtime, holiday pay, birthday pay, and vacation are recoverable under § 2104(a)(1)(A).

"In a statutory construction case, the beginning point must be the language of the statute. . . ." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). Section

---

period); *Frymire v. Ampex Corp.*, 61 F.3d 757, 771-72 (10th Cir. 1995) (finding statute and legislative history susceptible to more than one reasonable interpretation, and concluding that work days approach "better reflects the statutory purpose"); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1283-84 (5th Cir. 1994).

[4]We exercise plenary review over the legal issues relating to the interpretation of the WARN Act. *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 (3d Cir. 1998).

2104, regarding administration and enforcement, specifies that if an employer fails to comply with the sixty-day notice requirement, the employer is

> liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff  for
>> (A) back pay for each day of violation at a rate of compensation not less than the higher of -
>>> (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
>>> (ii) the final regular rate received by such employee; and
>> (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.
>
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. §  2104(a)(1).

We do not start with a clean slate.  *North Star* considered this very section of the WARN Act, rejected the argument that the back pay provision implied a "lost earnings concept," and concluded that the statutory language allowed the recovery of back pay for each calendar day of violation.  5 F.3d at 42-43.  Accordingly, consistent with *North Star*, we reject the UMWA's contention that all of the items of remuneration it seeks should be included in order to make the employees whole.  *Id*.

We focus, therefore, on the statutory text.  To be sure, § 2104(a)(1)(A) regarding "back pay" is not a model of clarity.   Nonetheless, the statutory scheme establishes that an employee's "back pay" must be based on that particular employee's historical earnings by determining that employee's "rate of compensation" as derived from the higher of

5

either his "average regular rate . . . during the last 3 years" or his "final regular rate." 29 U.S.C. § 2104(a)(1)(A). Consistent with this historical approach for computing an employee's regular daily rate, we conclude that the "back pay" computation under § 2104(a)(1)(A) includes compensation for overtime which was normally or regularly available.

The historical approach set out in § 2104(a)(1)(A), however, is not consistent with the UMWA's submission that the employees should be compensated for the mere fortuity that Veteran's Day fell within the sixty day violation period. Similarly, § 2104(a)(1)(A)'s look back militates against including in the back pay computation a sum for those few employees whose birthday would be celebrated during the sixty day violation period. As *Ciarlante* instructs, the computation of "back pay" is not concerned with a particular period of time. Rather, the "statute requires us to establish the number of days in a given violation, and then multiply that number by an employee's regular rate of pay per day, in order to arrive at a starting point for the damage award owed to each aggrieved employee." 143 F.3d at 139.

Nor are we persuaded by the UMWA that "back pay" requires "payment of all floating and regular vacation pay." To embrace this interpretation of § 2104(a)(1)(A), we would have to ignore the plain text of § 2104(a)(1)(B), which provides that an employer who violates the notice provision of the WARN Act is liable for "benefits," but only as specified in an employee benefit plan subject to ERISA. *North Star*, 5 F.3d at 42

6

(pointing out that statutory construction principles require avoiding a construction that renders any provision superfluous); *see also TRW Inc. v. Andrews*, 534 U.S. 29, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Thus, the WARN Act does not encompass all fringe benefits offered by an employer. Because we are obligated to apply the express language of the statute, we will reverse the District Court's determination that Eighty-Four's employees were entitled, as a component of the damages due under the WARN Act, to their vacation pay.

Finally, we reach Eighty-Four's challenge to the District Court's conclusion that it is liable for damages under the Act for those employees who were on disability status and did not receive the requisite notice. The District Court adopted the report and recommendation of a Magistrate Judge that these individuals were "affected employees" entitled to notice and that damages were due in the absence of such notice.

Section 2101 defines "affected employees" as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). This section also defines the "term 'employment loss'" as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6 month

7

period." 29 U.S.C. § 2101(a)(6). Moreover, under § 2102, an employer must provide written notice to "each affected employee" or his or her representative. 29 U.S.C. § 2102(a)(1). If notice is not provided, then the employer "is liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff. . . ." 29 U.S.C. § 2104(a). In subsection (a)(7), the Act specifies that

> [f]or purposes of this subsection, the term "aggrieved employee" means an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice either directly or through his or her representative as required by section 2102 of this title.

29 U.S.C. § 2104(a)(7).

Under the plain language of these provisions of the WARN Act, an employee on disability status may reasonably be expected to experience an "employment loss" under § 2101(a)(6)(A) as a result of plant shutdown because his employment ceases through no fault of his own. Thus, a disabled employee is an aggrieved employee under § 2104(a)(1) and (7) who is entitled to damages.

Eighty-Four argues that these disabled employees are not entitled to damages because under the regulations affected employees are those workers on leave "who have a reasonable expectation of recall." *See* 29 C.F.R. § 639.3(a)(1). It relies on *Bradley v. Sequoyah Fuels Corp.*, 847 F.Supp. 863, 868 (E.D. Okla. 1994), which cited regulation § 639.3 (a)(1) and concluded that an employee on medical leave who was not expected to return to work was not an "affected employee." We find this argument unpersuasive

8

because regulation § 639.3(a)(1) explains how to determine if an entity has the requisite number of employees to be an employer under the Act. That is not the issue before us. Accordingly, we will not disturb the District Court's determination that Eighty-Four was liable for WARN Act damages for the twenty-two employees on disability status, as well as the additional nine employees on disability who would have been recalled.

For the reasons set forth above, we will affirm in part and will reverse in part the judgment of the District Court. We will affirm the District Court's determination that *North Star*'s calendar day approach governs the back pay computation, that back pay includes overtime which is normally and regularly available, and that the employees on disability status are entitled to damages. We will reverse the District Court's decision that "back pay" required the payment of holiday time for Veteran's Day, birthday pay, and floating and regular vacation. Because damages must be re-calculated, we will remand for further proceedings.