United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2057
_____

Richard Breedlove, individually,      *
and on behalf of all others similarly     *
situated; Nadine Tanner, individually,       *
and on behalf of all others similarly    *
situated,                           *
                               *
     Plaintiffs/Appellants,      *
                         * Appeal from the United States
                         
v.                            * District Court for the Eastern
                         * District of Arkansas.
Earthgrains Baking Companies, Inc.,    *
doing business as Campbell       *
Taggart Baking Company, Inc.,      *
                           *
     Defendant/Appellee.      *

_____

Submitted: November 19, 1997
Filed: April 9, 1998

_____

Before McMILLIAN and WOLLMAN, Circuit Judges, and STEVENS, District Judge.[1]

STEVENS, District Judge.

    Plaintiffs/appellants are former employees of appellee/defendant Earthgrains

_____

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

Baking Companies, Inc. ("Earthgrains"). Plaintiffs brought this suit against Earthgrains pursuant to the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 et seq. The district court[2] granted Earthgrains' motion to dismiss on the ground that plaintiffs had been compensated fully under the WARN Act. See Breedlove v. Earthgrains Baking Companies, Inc., 936 F. Supp. 802 (E.D. Ark. 1997). We affirm.

I.

Plaintiffs worked at Earthgrains' baking plant in Little Rock, Arkansas. In December of 1995, Earthgrains notified its employees, including plaintiffs, that it would close the Little Rock plant. Plaintiffs then brought suit alleging that Earthgrains had violated the WARN Act's notice provision, 29 U.S.C. § 2102, which requires certain employers "to provide written notice to each affected employee sixty (60) days in advance" of the closing of a covered facility.[3] In their complaint, the plaintiffs sought recovery of wages that they claim should have been paid during the notice period. They admitted that Earthgrains had "paid [them] for working days within the required 60 day notification period." App. 95, Compl. ¶ 14. However, the employees alleged that they were entitled to wages for each calendar day within the violation period.

Earthgrains then moved to dismiss the action. Earthgrains claimed, on the basis of plaintiffs' admission that Earthgrains had paid wages for working

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[3]On this appeal, there is no dispute that Earthgrains was an "employer" subject to the WARN Act's provisions and that Earthgrains' actions triggered the notice requirement.

days within the notification period, plaintiffs had not stated a claim for relief.  Earthgrains contended that these wages constituted the entire amount they were obligated to pay under the

WARN Act. Plaintiffs concurrently moved for summary judgment claiming that they were entitled to wages for each calendar day within the violation period as a matter of law. The district court granted Earthgrains' motion to dismiss and denied plaintiffs' motion for summary judgment, holding that the employees were entitled only to wages for each working day within the notification period. The district court found that the damages provision of the WARN Act was capable of more than one reasonable interpretation and, therefore, examined the legislative history to discern Congressional intent. Finally, the district court found that the legislative history demonstrated that Congress "unequivocally" intended that damages be measured by working days rather than calendar days. See 963 F. Supp. at 805.

## II.

The standard for a district court to employ in ruling a motion to dismiss is clear. A district court must accept the allegations contained in the complaint as true, see Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. See Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" McCormack v. Citibank, N.A., 979 F.2d 643, 646 (8th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Our standard of review of a district court's grant of a motion to dismiss is similarly clear. We review de novo. See Hafley, 90 F.3d at 266; First Commercial Trust Co., N.A. v. Colt's Mfg. Co., Inc., 77 F.3d 1081, 1083 (8th Cir. 1996); Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir.1995).

4

## III.

The issue of whether an employer's liability to affected employees due to a violation of the WARN Act's notice requirement should be calculated based on

working days or calendar days has been addressed by several courts. The majority of Circuit Courts have held working days to be the proper basis for the calculation. See Carpenters District Council v. Dillard Dept. Stores, Inc., 15 F.3d 1275, 1282-86 (5th Cir. 1994), cert. denied, 513 U.S. 1126 (1995); Saxion v. Titan-C Manufacturing, Inc., 86 F.3d 553, 558-61 (6th Cir. 1996); Frymire v. Ampex Corp., 61 F.3d 757, 771-72 (10th Cir. 1995), cert. dismissed, 116 S. Ct. 1588 (1996). Only one Circuit Court has held that compensation to employees for a violation of the WARN Act's notice provisions is based on calendar days rather than working days. See United Steel Workers of America v. North Star Steel Co., Inc., 5 F.3d 39 (3d Cir. 1993), cert. denied, 510 U.S. 1114 (1994). As noted above, the district court in this case found working days to be the proper basis, see 963 F. Supp. at 805, while another judge of the same district previously held that liability was based on calendar days. See Joshlin v. Gannett River States Publ'g Corp., 840 F. Supp. 660 (E.D. Ark. 1993). The issue, however, is one of first impression for this Court.

A.

An employee's compensation when an employer violates the WARN Act's notice requirement is governed by 29 U.S.C. § 2104(a)(1). The statute provides that any employer who violates the notice provision "shall be liable to each aggrieved employee who suffers an employment loss for "back pay for each day of violation." Id. Our analysis, of course, begins by examining the language of the statute. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)); American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982) (citing Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979)); United States v. Bishop, 894 F.2d 981, 985

6

(8th Cir.), <u>cert. denied</u>, 498 U.S. 836 (1990). If the statute is clear and unambiguous because it is not possible to construe it in more than one reasonable manner, we need go no further. <u>See</u> <u>In re Erickson Partnership</u>, 856 F.2d 1068, 1070 (8th Cir. 1988); <u>Beef Nebraska, Inc. v. United States</u>, 807 F.2d 712, 717-18 (8th Cir. 1986) (citing <u>Maine v. Thiboutot</u>, 448

U.S. 1, 6 n.4 (1980)).

The statute defining compensation to be paid for a notice violation reads as follows:

(1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for –

(A) back pay for each day of violation at a rate of compensation not less than the higher of –

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

Such liability shall be calculated for the period of violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a)(1).

Of course, the relevant language in this case is the phrase "back pay for each day of violation." Id. § 2104(a)(1)(A). On one hand, the term "back pay" seems to imply wages that the employee would have received absent a violation. The Supreme Court construed the term "back pay" as used in the National Labor Relations Act as "payment of a sum equal to what [an employee] normally would have earned absent a violation of the statute." Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197 (1941).

Using working days to calculate an employer's liability could be a reasonable interpretation of this language. On the other hand, the phrase "for each day of

violation" seems to imply that an employee would receive daily wages for each day of the violation period. Using calendar days to calculate an employer's liability could be a reasonable interpretation of this language.

Thus, in our view, the statute is susceptible to more than one reasonable interpretation. If "for each day of violation" mandated the use of calendar days, employees would be paid for days on which they do not work. Such an interpretation would fly in the face of what is commonly thought of as "back pay." To interpret the phrase "back pay for each day of violation" to mean that employees should receive wages on days they otherwise would not have been paid would be to write the "back pay" out of the statute. But to interpret the statute, on its face, as requiring the use of working days alone to arrive at a figure for "back pay," would not fully account for the phrase "for each day of violation."

The Third Circuit in North Star Steel came to the opposite conclusion, finding that the statute could not be reasonably construed in more than one way. The North Star Steel Court held that the term "back pay" is "simply a label used to describe the amount of damages for which an employer is liable for each day of the violation." North Star Steel, 5 F.3d at 42. It reached this conclusion using three common rules of statutory construction. See id. at 42-43. We, however, agree with the conclusions of the Fifth and Sixth Circuits that none of the rules of statutory construction used by the Third Circuit compelled the result that the Third Circuit reached. See Dillard, 15 F.3d at 1283 n.14; Saxion, 86 F.3d at 559-60. As demonstrated by their analyses, we believe that interpreting this provision on its face using rules of statutory construction creates even more ambiguity as to its proper meaning.

A statute can also be considered ambiguous when a particular interpretation from the face of a statute could lead to an anomalous, unusual or absurd result. A hypothetical situation, as set forth in Dillard is illustrative.

> [T]he violation period contains sixty days.
> Employee "A" is a full-time employee who works a
> regular eight-hour shift each weekday. However,
> employee "B" is a part-time employee who works
> just one ten-hour shift each Saturday. Under the
> . . . calendar-day approach, employee "A" would
> receive 480 hours pay in lieu of notice (eight
> hours per day times sixty days), while part-time
> employee "B" would receive 600 hours pay (ten
> hours per day times sixty days).

Dillard, 15 F.3d at 1285. Although Congress could possibly have intended this result, we believe that this hypothetical outcome is so unusual that we cannot ignore the likelihood that the legislative history would clarify Congress' intent.

### B.

Having determined that there is ambiguity in the statute because it is subject to more than one reasonable interpretation, we next turn to the legislative history. As the Fifth and Sixth Circuits noted, a Senate Report regarding this legislation provides the answer. See Dillard, 15 F.3d at 1284-85; Saxion, 86 F.3d at 560.

> For violations of the notice provisions, damages
> are to be measured by the wages the employee
> would have received had the plant remained open
> or the layoff had been deferred until the
> conclusion of the notice period, less any wages
> or fringe benefits received from the violating
> employer during that period. This is in effect
> a liquidated damages provisions [sic], designed
> to penalize the wrongdoing employer, deter
> future violations, and facilitate simplified
> damages proceedings.

S. Rep. No. 62, 100th Cong. 1st Sess. 24 (1987). Since "damages are to be measured by the wages the employee would have received," id., the number of working days

within the violation period must be used to calculate the amount owed by the employer. <u>See</u> <u>Dillard</u>, 15 F.3d at 1284. Also, the Senate Report language "mirrors" the interpretation of "back pay" in <u>Phelps Dodge Corp. v. NLRB</u>. Jeffrey Turner, Comment, <u>Damages Under the Workers Adjustment and Retraining Act (WARN)</u>:

<u>Why Damages Cannot Be Based on Calendar Days</u>, 12 T.M. Cooley L. Rev. 197, 213 (1995).  Therefore, we believe that the Senate Report's statement decides the issue.[4]

Plaintiffs argue that there is an inconsistency between the first sentence and the second sentence of the Senate Report statement quoted above.  Plaintiffs reason that the first sentence indicates a "make-whole" calculation of damages while the second sentence mandates a remedy which is punitive in nature.  We are unpersuaded that there is an inconsistency.  Employers are, in a sense, penalized by not using the notice provisions because they must pay affected workers wages although no work was done. The WARN Act's provisions can still be viewed as punitive or deterrent even though the employees do not receive an undue windfall.  Ultimately, however, we find the clear statement of the Senate Report controlling.

Plaintiffs also argue that the purpose of the WARN Act is to provide workers who are laid off notice so that they may adjust to changed circumstances, describing the WARN Act as requiring notice so that employees may continue to be at the plant or factory location and gather to receive counseling and training.  Plaintiffs refer to legislative debate which rejected an amendment to the WARN Act to allow "severance  pay in lieu of notice."  134 Cong. Rec. 15,926 (1988) (statement of Sen. Quayle).  <u>See</u>  <u>also</u> <u>id.</u> at 15,928 (statement of Sen. Metzenbaum) ("[T]he bill is about giving notice.  It is not a mandatory severance bill . . . .").  Although the debate evinces a purpose to require employers to give notice rather than allowing them to thwart the purposes

---

[4]We also note that the Senate appears to have reached a consensus that the WARN Act is not a way "to place an additional financial burden on the employers of this country."  134 Cong. Rec. 15,928 (1988) (statement of Sen. Metzenbaum).

of the statute by giving affected workers "severance pay," we believe it does not overcome the clear intention manifested in the Senate Report.

Moreover, this Court has characterized the WARN Act as "most closely

analogous to an action to recover damages for a breach of an implied contract (or breach of an obligation) to notify employees for terminating them." Aaron v. Brown Group, Inc., 80 F.3d 1220, 1225 (8th Cir. 1996). This bolsters our conclusion that Congress did not intend to provide employees who did not receive notice more compensation than they would have received had notice been given.

IV.

We hold that an employer's liability under the WARN Act's compensation provision, 29 U.S.C. § 2104(a)(1), is calculated based on working days. Because the employees admitted in their complaint that they were paid all wages for working days within the violation period, we affirm the decision of the district court to dismiss the complaint for failure to state a claim upon which relief could be granted.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT