**Charles KELLY, et al., Plaintiffs,**

**v.**

**SABRETECH INC., Defendant.**

**No. 97–1718–CIV.**

United States District Court,
S.D. Florida.
Miami Division.

June 8, 1999.

George G. Mahfood, Leesfield Leighton Rubio & Mahfood, Miami, FL, Thomas Harold Buscaglia, T.H. Buscaglia & Associates, Miami, FL, for Charles Kelly, John A. McCarthy, Robert E. McFetridge.

James N. Foster, Jr., McMahon Berger Hanna Linihan Cody & McCarthy, St. Louis, MO, Michelle M. Cain, McMahon Berger Hanna Linihan Cody & McCarthy, St. Louis, MO, Thomas McDougal Sherouse, Shook Hardy & Bacon, Miami, FL, for Sabretech, Inc., Sabreliner Corporation.

### ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE came before the Court upon pending Motions: Defendant Sabretech, Inc.'s Motion for Partial Summary Judgment (DE# 45) ("Motion"); Plaintiff's Response in Opposition to Motion for Partial Summary Judgment[1] ("Response") (DE# 50); and Defendant's Reply Memo-

randum in Support of Motion for Partial Summary Judgment ("Reply") (DE# 57). The Court has reviewed the Motion and the pertinent portions of the record in this matter and is otherwise fully advised in the premises.

## I. Background

This class action complaint stems from Sabretech's closing of its Miami International Airport aircraft maintenance and repair facility in 1997. Defendant operated an FAA-certified independent repair station at Miami International Airport, providing maintenance for air carriers operating out of Miami. (Stip. at 4.("Stat. Of Uncontested Fact").) Defendant was implicated in the May 11, 1996, Valujet Airlines Flight 591 crash in the Florida Everglades; after this event, there was extreme negative publicity and a severe decline in business at the Miami facility. (Response at 3; Reply at 2.) In October 1996, Defendant entered into discussion with Commodore Aviation, Inc., for the sale of certain of Defendant's assets in Miami. (Stip. at 4.) The employment of certain workers at Defendant's Miami facility was terminated at various points beginning in late 1996. On January 15, 1997, Defendant surrendered its FAA repair station license for the Miami facility. (Id.) Plaintiffs, former employees of Sabretech's Miami facility, allege that the layoffs and the closing occurred in violation of the written notification requirements set forth in the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101–2109. Plaintiffs seek statutory damages for themselves and the Class, including back pay, attorneys' fees, and costs. Defendant contends that it was not required to notify the plaintiffs in this action of their layoffs sixty days prior to those layoffs, and denies

---

1. In response to Defendant's Motion for Partial Summary Judgment, Plaintiffs filed a single document that incorporated a Response and Plaintiffs' Motion for Total Summary Judgment. At this juncture, we rule only on Defendant's Motion for Partial Summary Judgment on the damages question; we reserve ruling on Plaintiffs' Motion for Total Summary Judgment (DE# 50) as well as Defendant's Motion for Total Summary Judgment (DE# 74).

all liability under the WARN Act and all damages claims.

## II. Legal Standard for Summary Judgment

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We measure the motion for summary judgment against these standards.

## III. Analysis of Statutory Provision of "Back Pay Damages for Each Day of Violation"

### A. Statement of Issue Presented

The parties agree that the question of whether to calculate back pay damages based on working days or calendar days is purely legal in nature and appropriately resolved on a motion for partial summary judgment. As an initial matter we note that Defendant continues to deny any liability under the WARN Act and maintains that Plaintiffs are not entitled to any damages pursuant to the WARN Act. However, Defendant has filed this motion for partial summary judgment solely on the damages issue "in order to narrow the issues" in contention in this action. Motion at 2–3. For the purposes of this Motion,[2] we assume (1) that WARN is applicable to the layoffs in question; (2)

that lack of proper notice necessitates the computation of back pay damages for a certain violations period; and (3) (as stated in Response) that the relevant employees are paid on an hourly, as opposed to a salaried, basis.

Briefly stated, under the WARN Act, an employer must give 60–day written notice of a plant closing or mass layoff. 29 U.S.C. § 2102(a). Where an employer violates the notice provisions, the aggrieved employees may bring a civil action against the employer for appropriate back pay. 29 U.S.C. § 2104(a). Specifically, this enforcement provision of the WARN Act states in pertinent part:

> (1) Any employer who orders a plant closing or mass layoff in violation of section 1202 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—
>
> > (A) *back pay for each day of violation* at a rate of compensation not less than the higher of—
> >
> > > (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
> > >
> > > (ii) the final regular rate received by such employee; [ ]
> >
> > . . .
>
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

*Id.* (emphasis added).

The sole question presented on this motion is what interpretation the Court gives to the phrase "each day of violation." Defendant argues that damages provided for in the WARN Act are calculated based on

---

**2.** The Court notes that the parties dispute numerous legal questions that underlie any final determination of the applicability of the WARN Act to the actual terminations of the named Plaintiffs and the all potential Class

members. *See* Plaintiffs' Motion for Total Summary Judgment (DE# 50); Defendant's Motion for Total Summary Judgment (DE# 74).

*working days* within the notice period, while Plaintiffs argue that damages are calculated based on *calendar days* of the notice period. Under a working days calculation, the former employees receive payment for the number of days that they would have worked during the notice period multiplied by their usual hourly wage; under the calendar days approach, they receive payment equal to their usual hourly wage applied to the entire sixty-day period. Accordingly, in all cases, an employee would receive more money under the calendar day calculation than that same employee would receive that if the working day approach was used (by definition, then, the employee would be compensated only *for certain days within that* sixty-day period).

### B. Legal Analysis

The Eleventh Circuit has not addressed this question. Of the five Circuit Courts of Appeals that have addressed this question, all but one have determined that damages under the statute should be determined by reference to working days within the 60–day period. *See Burns v. Stone Forest Industries, Inc.,* 147 F.3d 1182 (9th Cir.1998); *Breedlove v. Earthgrains Baking Companies, Inc.,* 140 F.3d 797, 1998 WL 162135 (8th Cir. Apr.9, 1998); *Frymire v. Ampex Corp.,* 61 F.3d 757, 771–72 (10th Cir.1995); *Saxion v. Titan–C–Manufacturing, Inc.,* 86 F.3d 553, 560–61 (6th Cir.1996); *Carpenters Dist. Council of New Orleans v. Dillard Dept. Stores, Inc.,* 15 F.3d 1275, 1283–85 (5th Cir.1994). *But see United Steelworkers of America v. North Star Steel Co.,* 5 F.3d 39, 43 (3rd Cir.1993) (adopting the calendar days construction). Upon careful consideration of the parties' arguments, the cited persuasive authority, and relevant Eleventh Circuit caselaw, we find that the "working day" calculation expressed in the *Dillard* line of cases to be the appropriate interpretation.

We begin our analysis by examining the language of the statute. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985)). Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms[,]" thus completing the court's inquiry. *Id.* (internal quotation and citation omitted). As stated in *Blue Cross and Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1548 (1990):

> We must assume that Congress intended the ordinary meaning of the words it used and absent a clearly expressed legislative intent to the contrary, that language generally is dispositive. *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1522 (11th Cir.1987). We depart from the official text of the statute and seek extrinsic aid for ascertaining its meaning only if the language is unclear or if apparent clarity leads to absurd results when applied. *American Trucking Associations, Inc. v. ICC,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

However, as stated by the Eleventh Circuit, a court may look beyond the "plain meaning" where the statutory language is "ambiguous or leads to absurd results." *United States v. Smith,* 957 F.2d 835, 836 (11th Cir.1992), *affd.,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). In order to discern the meaning of the ambiguous language, the court attempts to discern the true intent of Congress, and where helpful, may consult the relevant legislative history. *See, e.g., Jones v. Metropolitan Atlanta Rapid Transit Authority,* 681 F.2d 1376 (1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

As discussed in *Dillard,* 15 F.3d at 1283, we find that the statutory provision "back pay for each day of violation" is ambiguous and susceptible to more than one reasonable interpretation. As explained by the Fifth Circuit:

> On the one hand, the term "back pay" connotes a remedy that would require the payment of a sum such that the

employees would be put in the same position they would have been had the violation never occurred. On the other hand, "each day of the violation" appears to require payment of "back pay" damages for each calendar day within the violation period, which would put the employees in a significantly better position than they would have enjoyed had the employer provided the full sixty-day notice.

*Dillard,* 15 F.3d at 1283 (citations omitted). *See also Burns,* 147 F.3d at 1184 ("literal reading of the words and the syntax of the statute allows for either reading"); *Breedlove,* 140 F.3d 797, 800 (finding statute is "susceptible to more than one reasonable interpretation"); *Frymire,* 61 F.3d at 771 (same); *Saxion,* 86 F.3d at 560 (same). *Compare North Star,* 5 F.3d at 43 ("reject[ing] defendant's argument that the use of phrase 'back pay' implies a lost earnings concept and, by so doing, renders the statutory language unclear.").

Although arriving at the same conclusion that the proper interpretation is "working day," the five Courts of Appeals have taken varied approaches to resolving the ambiguous language. The Ninth Circuit in *Burns* and Tenth Circuit in *Frymire* rejected consideration of the legislative history. In *Burns,* the Court endeavored to "evaluate the alternative readings in light of the purpose of the statute"—which it characterized as "a wage workers' equivalent of business interruption insurance." 147 F.3d at 1184. This general purpose inquiry was consistent with Supreme Court precedent interpreting the term "back pay" in other labor contexts. *Id.* at 1184 (citing *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)). Similarly in *Frymire,* the Tenth Circuit held that the "work days" calculation "better reflects the statutory purpose" of WARN and declined to rely on ambiguous legislative history. 61 F.3d at 772. In contrast, the Fifth Circuit (in *Dillard* ), Sixth Circuit (in *Saxion* ), and Eighth Circuit (in *Breedlove* ) have relied explicitly on legislative history as one of the sources supporting this finding.

Consistent with the majority of the Courts of Appeals, we find that a "working day" calculation is appropriate. Beginning by examining the language of the statute, *Breedlove,* 140 F.3d at 799, we find that there is ample evidence that the "working day" calculation is proper based on Supreme Court precedent construing "back pay" in related contexts, viewed in conjunction with the statutory purpose of WARN. While we agree with the *Burns* Court that it is not the court's role to "parse the ambiguous legislative history as though it were law," 147 F.3d at 1184, it also is persuasively argued that the weight of the legislative history supports this finding. *See Dillard,* 15 F.3d at 1285 (citing legislative history and noting results inconsistent with purpose if otherwise construed); *see also Breedlove,* 140 F.3d at 800–801.

Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Partial Summary Judgment (DE# 45) is GRANTED.