45 P.3d 345

**Michael J. SHANNON, Plaintiff–Appellee,**

**v.**

**COMPUTER ASSOCIATES INTERNATIONAL, INC., a Delaware corporation; Platinum Technology, Inc., a corporation; Mastering Computers, Inc., an Arizona corporation, Defendants–Appellants.**

**No. 1 CA–CV 01–0321.**

Court of Appeals of Arizona, Division 1, Department C.

April 30, 2002.

---

David C. Larkin, P.C. By David C. Larkin, Tempe, Attorneys for Appellee.

Bury, Moeller, O'Meara & Gage By Roger W. Frazier, Tucson, Attorneys for Appellants.

## OPINION

EHRLICH, Judge.

¶ 1 Michael J. Shannon arranged to terminate his employment with Platinum Technology and signed a contract to become an independent contractor doing work for Platinum. Immediately thereafter, Platinum announced a mass layoff of its employees, whereupon Shannon sought from Platinum back pay pursuant to the federal Worker Adjustment and Retraining Notification ("WARN") Act. When his request was denied, he sued. The trial court ruled that Shannon was entitled to such pay. For reasons discussed below, we conclude to the contrary; we therefore reverse the judgment in Shannon's favor.

## BACKGROUND

¶ 2 Shannon was hired by Mastering Computers and continued when the employer became Platinum Technology. He presented seminars on computer-software use throughout the United States.

¶ 3 On February 5, 1999, Shannon told his direct supervisor that he "might need" to resign. The supervisor informed Ted Hernandez, a managing supervisor, who met with Shannon. Hernandez offered Shannon a $5000 annual raise, which Shannon declined. Hernandez then suggested that Shannon could give the seminars as an independent contractor. Shannon agreed and, on the same day, he signed an independent-contractor agreement titled "Agreement of New Consultant" that changed his status from employee to independent contractor effective March 1, 1999, with payment to be on a per-seminar basis. Hernandez kept Shannon on the payroll until the end of February so that Shannon's income would continue until he began the March seminars under contract.

¶ 4 Eight seminars were scheduled for March 1999, and, pursuant to the agreement, Shannon was to be paid $750 for each one he taught. Hernandez advised Shannon that there were no seminars scheduled after March and that there were "no guarantees." Additionally, the contract provided that Platinum did not agree to retain Shannon for any specified duration and that it could terminate Shannon's engagement at any time for any or no reason.

¶ 5 On February 25, 1999, Platinum announced to employees there would be mass layoff the next day. Platinum paid Shannon through February 26, but it decided not to utilize his services for the scheduled March seminars. The company honored the fourteen-day cancellation provision of the independent-contractor agreement, paying Shannon for the seminar that was scheduled during that time.

¶ 6 On March 1, Shannon received a letter from Platinum advising him that, as a result of the permanent reduction in workforce, his employment was terminated effective February 26, 1999, and that he would receive his regular salary and benefits for sixty days as required by the WARN Act, 29 U.S.C. § 2101 et seq. (1994). When Shannon did not receive those benefits, Platinum took the position that the letter had been sent in error due to the fact that Shannon was on the payroll through the end of February.

¶ 7 Shannon sued Platinum, Mastering Computers and Computer Associates International, Inc., which he believed had acquired Platinum (collectively "Platinum"), seeking unpaid wages, back pay for a violation of the

WARN Act and damages for breach of the independent-contractor agreement. The case was heard by an arbitrator, who found in favor of Shannon and awarded him $9166.68 for sixty days of back pay, plus additional amounts for attorneys' fees, prejudgment interest and costs.

¶ 8 Platinum appealed the arbitration award. Each side filed a motion for summary judgment.

¶ 9 Judge B. Michael Dann granted summary judgment in favor of Shannon on the WARN Act claim but only for the two days in February for which Shannon remained an employee after the February 26 layoffs. Judge Dann then denied both motions for summary judgment on the question of Platinum's liability for back pay under the WARN Act for March 1 and thereafter to a total of sixty days. The judge reasoned that, if Platinum had given the notice required by the Act, Shannon might have elected to continue as an employee rather than switching to independent-contractor status, thus raising an issue of fact. Summary judgment was granted in favor of Platinum on Shannon's claim for breach of contract.

¶ 10 Shannon moved to amend his complaint to add a claim for rescission of the independent-contractor agreement. Judge Robert D. Myers, who was assigned the case after Judge Dann retired, granted the motion. He also denied motions for reconsideration filed by both Shannon and Platinum.

¶ 11 Platinum moved for partial summary judgment on the rescission claim, and Shannon moved for summary judgment on his WARN Act damages. The case was subsequently assigned to Judge Roger W. Kaufman, who denied Platinum's motion regarding rescission. He also ruled that Shannon was entitled to the presumptive sixty days of back pay from the time he received actual notice of termination. Judge Kaufman thus awarded Shannon $8739.73 in back pay and $17,500 in attorneys' fees. Platinum appealed from the judgment.

### DISCUSSION

#### A. WARN Act Damages

■ ¶ 12 In 1988, Congress enacted the WARN Act, which provides that an employer with more than 100 full-time employees

shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order.

29 U.S.C. § 2102(a)(Supp.1999). The notice must be given to

each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee.

29 U.S.C. § 2102(a)(1) (1994). The purpose of the Act is to ensure that "workers receive advance notice of plant closures and mass layoffs that affect their jobs." *Marques v. Telles Ranch, Inc.,* 131 F.3d 1331, 1333 (9th Cir.1997).

¶ 13 The WARN Act further provides that an employer that orders a qualifying plant closing or mass layoff without the required notice

shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for ... back pay for each day of violation at a rate of compensation not less than the higher of ... the average regular rate received by such employee during the last 3 years of the employee's employment; or ... the final regular rate received by such employee ...,

as well as certain employee benefits. 29 U.S.C. § 2104(a)(1)(A), (B). The employer's liability is "calculated for the period of the violation, up to a maximum of 60 days...." 29 U.S.C. § 2104(a)(1).

¶ 14 Shannon argues that he was an "affected employee" entitled to sixty-days advance notice of Platinum's layoffs because the notice should have been given sixty days before February 26, 1999, maintaining that, on that date, December 28, 1998, he was an employee who would have reasonably expected to suffer an employment loss when the layoffs occurred in late February. He also asserts that the trial court correctly found that, on February 26, he was an employee entitled to the protection of the WARN Act. From that finding he contends that his cir-

cumstances after the layoff were irrelevant and that Platinum was required to pay him wages for the full sixty-day period as a sanction for failing to have given him the statutory notice. Neither the WARN Act nor cases interpreting the Act support his arguments.

■ ¶ 15 We first examine whether Shannon was an "affected" and "aggrieved" employee. Logically, an "affected employee" must be an employee in order to suffer an employment loss. The applicable regulations define an employee as an individual who is actively working. *Kildea v. Electro–Wire Products, Inc.*, 144 F.3d 400, 405 n. 6 (6th Cir.1998)(citing 20 C.F.R. § 639.3(a)(1)). Because Shannon still was on Platinum's payroll when the layoffs were announced on February 25, he was an employee on that date. The question then is whether he was an "affected employee."

¶ 16 According to 29 U.S.C. § 2101(a)(5), "the term 'affected employees' means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." "Employment loss" is defined in relevant part as "an employment termination, other than a discharge for cause, voluntary departure, or retire-

ment." 29 U.S.C. § 2101(a)(6)(A). In light of these definitions and the undisputed facts, Shannon was not an affected employee on February 25. He did not reasonably expect to experience an employment loss as a consequence of the proposed layoff because he was employed by and on the payroll of Platinum through Friday, February 26. As of the next workday, March 1, he was to have become an independent contractor of Platinum and would no longer have been an employee on Platinum's payroll.[1] His planned employment termination as of February 26 was due to his voluntary departure and did not result from the layoffs.[2]

■ ¶ 17 We find no authority for the proposition that affected-employee status is determined by counting back sixty days from the date the notice of layoffs is given rather than considering the status of employees on the date of the notice. The WARN Act requires that a mass layoff not occur until the end of a sixty-day period after the employer serves written notice of the layoff to each affected employee. 29 U.S.C. § 2102(a)(1). In other words, affected employees should be able to continue working for sixty days after the notice is given. If their employment is terminated immediately

1. The United States Department of Labor regulations implementing the provisions of the WARN Act provide that self-employed contract employees are not "affected employees." *Bradley v. Sequoyah Fuels Corp.*, 847 F.Supp. 863, 868 (E.D.Okla.1994) (citing 20 C.F.R. § 639.3(e)).

2. Shannon takes the position that he was an affected and aggrieved employee because he was terminated two days before the March 1 commencement of the independent-contractor agreement. Those two days were a Saturday and a Sunday, however, and there is nothing in the record to suggest that Shannon normally worked on weekend days or that pay through Friday, February 26 was not pay through the end of the month or regular pay period. Several federal circuit courts have considered whether back pay for a sixty-day WARN Act violation period is calculated only for a worker's normal workdays or for all sixty days. All but one have decided that damages are to be paid only for normal workdays. *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182 (9th Cir.)(employer's liability for WARN Act notice violation calculated on working days, not calendar days), *cert. denied*, 525 U.S. 1040, 119 S.Ct. 591, 142 L.Ed.2d 533 (1998); *Breedlove v. Earthgrains Baking Compa-*

*nies*, 140 F.3d 797 (8th Cir.)(same), *cert. denied*, 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998); *Saxion v. Titan–C–Manufacturing, Inc.*, 86 F.3d 553 (6th Cir.1996)(same); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275 (5th Cir. 1994)(same), *cert. denied*, 513 U.S. 1126, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995). *Contra United Steelworkers of America, AFL–CIO–CLC v. North Star Steel Co.*, 5 F.3d 39 (3rd Cir.1993)(employer required to pay damages for each calendar day within violation period, not just for days that would have been regular workdays), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). Reviewing this authority, we conclude that Shannon had no loss of employment during the two weekend days because he lost no wages, and WARN Act back pay would not have been available for those days. We reject the contrary authority in *Georgia–Pacific Corp. v. Unemployment Compensation Bd. of Review*, 157 Pa.Cmwlth. 651, 630 A.2d 948 (1993), because that court relied on *Carpenters District Council of New Orleans v. Dillard Dep't Stores, Inc.*, 778 F.Supp. 297 (E.D.La.1991), which decision was reversed, thus putting the *Georgia–Pacific* holding in conflict with the majority of federal circuit courts.

upon service of the notice or at any time before the end of the sixty-day period, the employer then must pay them what they would have earned if they had been able to finish the sixty days of work. *See Burns v. Stone Forest Industries, Inc.*, 147 F.3d 1182, 1184 (9th Cir.)(stating that, pursuant to the WARN Act, "workers get what they would have earned in the two-month notice period, were there no shutdown"), *cert. denied*, 525 U.S. 1040, 119 S.Ct. 591, 142 L.Ed.2d 533 (1998).

¶ 18 Accordingly, "[t]he violation period is comprised only of those 'days after the shutdown or layoff in violation of [the WARN Act] and extends for the number of days that notice was required but not given.'" *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1286 (5th Cir.1994)(quoting H.R. CONF. REP. No. 100–576, 100th Cong., 2nd Sess. 1052 (1988), *reprinted in* 1988 U.S.C.C.A.N.2078, 2085), *cert. denied*, 513 U.S. 1126, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995). Thus, pursuant to the WARN Act, affected-employee status is determined on the date the notice is given, not as of sixty days before the notice was given. Shannon did not meet the "affected employee" definition when written notice was served on February 26.

¶ 19 Similarly, Shannon was not entitled to back-pay damages pursuant to 29 U.S.C. § 2104(a)(1) because he was not an aggrieved employee who suffered an employment loss as a result of the layoff. Shannon was on the Platinum payroll until February 26 as agreed and was to become an independent contractor on March 1. The termination of his employment occurred as the result of his voluntary departure, not because of the layoffs. Therefore, he was not entitled to any back pay from Platinum for a WARN Act violation.

¶ 20 Shannon argues, however, that, because he was an employee when notice of the layoff was served and the notice violated the WARN Act, he is entitled to the statutory back pay for sixty days as a sanction or penalty against Platinum for the violation of the Act. We disagree.

¶ 21 The primary purpose of the WARN Act is remedial. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 395, 151 L.Ed.2d 299 (2001). The Act "is a wage worker's equivalent of business interruption insurance [that] protects a worker from being told on payday that the plant is closing that afternoon and his stream of income is shut off." *Burns*, 147 F.3d at 1184. The United States Court of Appeals for the Ninth Circuit recently explained,

> Congress was clearly concerned with ensuring an income stream, or, in the words of the governing regulations, with "provid(ing) protection to workers, their families and communities." 20 C.F.R. § 639.1(a). Indeed, the Senate report on the "Economic Dislocation and Worker Adjustment Assistance Act," from which WARN's provisions were ultimately severed and separately enacted, explicitly stated that the Act's purpose was to "assur(e) the most rapid possible readjustment and retraining of displaced workers" and to "eas(e) the personal and financial difficulties for workers who must make these transitions." S.Rep. No. 100–62, at 3 (1987).

*Las Vegas Sands*, 244 F.3d at 1159.

¶ 22 The Act is not entirely remedial, however, in the sense that it does not allow an employer to deduct from WARN Act violation back-pay damages any wages earned by an employee from other sources. *Dillard*, 15 F.3d at 1284 n. 14. The Fifth Circuit has suggested that Congress may have chosen not to make WARN Act compensation provisions purely remedial "to avoid placing a burden on a terminated employee to mitigate damages by taking any job offered ... to give a terminated employee a window of time to readjust without immediately having to search for a job ... for simplicity in the statutory scheme, etc." *Id.*

¶ 23 Congress noted that the statutory damages for a WARN Act violation could be viewed as a penalty.

> For violations of the notice provisions, damages are to be measured by the wages ... the employee would have received had

the plant remained open or the layoff had been deferred until the conclusion of the notice period, less any wages or fringe benefits received from the violating employer during that period. This is in effect a liquidated damages provisions [sic], designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings.

*Saxion v. Titan–C–Manufacturing, Inc.,* 86 F.3d 553, 560 (6th Cir.1996)(quoting S.Rep. No. 62, 100th Cong., 1st Sess. 24 (1987)). WARN Act provisions can be viewed as punitive or deterrent because, in essence, employers are "penalized by not using the notice provisions because they must pay affected workers wages although no work was done." *Breedlove v. Earthgrains Baking Companies,* 140 F.3d 797, 801 (8th Cir.), *cert. denied,* 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998).

¶ 24 Nevertheless, we do not believe Congress intended the WARN Act to be used to punish an employer by requiring it to pay damages to an employee like Shannon who had voluntarily resigned from his employment before a layoff was announced and thus whose employment was not terminated by the layoff. The Act provides that the violating employer must pay back pay for the violation period. *Burns,* 147 F.3d at 1185. "The term 'back pay' for employees has traditionally been understood to mean 'a sum equal to what they normally would have earned' had the violation not occurred." *Id.* (quoting *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)). As noted above, the U.S. Senate Labor Committee stated that damages for violations of the notice provisions of the WARN Act "are to be measured by the wages ... the employee would have received [if] ... the layoff had been deferred until the conclusion of the notice period...." *Saxion,* 86 F.3d at 559 (quoting S.Rep. No. 62, 100th Cong., 1st Sess. 24 (1987)). The amount Shannon would have earned as salary during the sixty-day violation period if the layoff had been deferred until the conclusion of the notice period was zero because either with or without the layoff he would not have been an employee of Platinum after February 1999 and thus would not have been on its payroll during the

sixty-day period. Therefore, even if WARN Act back pay is viewed as liquidated damages that constitute an employer penalty, Shannon was not an employee who met the criteria to receive such damages.

¶ 25 The trial court erred in awarding WARN Act damages to Shannon. Therefore, we reverse the judgment in favor of Shannon regarding WARN Act damages and remand for entry of judgment in favor of Platinum on that claim.

### B. Rescission of Independent–Contractor Agreement

¶ 26 The trial court granted summary judgment in favor of Platinum on Shannon's claim of breach of the independent-contractor agreement. Shannon subsequently moved to amend his complaint to add a claim for rescission of the agreement, representing that, if the agreement is rescinded, Platinum's argument that he did not suffer an employment loss from the layoff would be meritless. Platinum opposed the motion to amend, arguing that the amendment would be futile because Shannon had elected his remedy by seeking summary judgment for breach of contract. The court permitted the amendment. It also denied Platinum's motion for summary judgment on the rescission claim, in which motion it again raised the argument of election of remedies.

¶ 27 When the trial court awarded Shannon sixty days of back pay under the WARN Act, the parties agreed that the rescission claim was rendered moot pending our ruling on the WARN Act. Because we have decided the WARN Act issue in favor of Platinum, upon remand, Shannon may reurge the claim pursuant to the parties' agreement.

### C. Attorneys' Fees

¶ 28 The trial court awarded attorneys' fees to Shannon as the prevailing party on the WARN Act claim. Because we have reversed the judgment in favor of Shannon, he no longer is the prevailing party, and this award is vacated.

¶ 29 Platinum seeks an award of fees pursuant to 29 U.S.C. § 2104(a)(6), which pro-

vides that, "[i]n any such suit [against an employer for WARN Act damages], the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." Shannon's WARN Act claim was not unreasonable. Therefore, in the exercise of our discretion, we conclude that Platinum is not entitled to an award of its fees.

## CONCLUSION

¶ 30 We reverse the judgment in favor of Shannon on the WARN Act claim and remand for entry of judgment in favor of Platinum. The attorneys' fees award in favor of Shannon is vacated, and we deny Platinum's request for attorneys' fees.

CONCURRING: DANIEL A. BARKER, Judge and PHILIP HALL, Judge.